### PAF MFG. CO. v. R. L. POLK CO. OF MISSOURI.
### No. 9906.

Circuit Court of Appeals, Eighth Circuit.
June 27, 1934.

O. J. Mudd, of St. Louis, Mo. (Foristel, Mudd, Blair & Habenicht, of St. Louis, Mo., on the brief), for appellant.

C. F. Storckman, of St. Louis, Mo. (Cullen, Fauntleroy & Edwards, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and WOODROUGH, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge.

This is an action at law brought by R. L. Polk Company against Paf Manufacturing Company to recover $7,219.48, the agreed price of mailing lists furnished during July, August, October, and December, 1930, under a written agreement between the parties dated September 28, 1928. The defendant (appellant) in its answer admitted its indebtedness in that sum to the plaintiff (appellee), but asserted as a counterclaim, arising from the same transaction, that the plaintiff was indebted to it in the sum of $10,847.23.

The alleged basis for the counterclaim was, in substance: That the written agreement was canceled by the parties in September, 1930, and an oral agreement substituted. That under this oral agreement the defendant was to pay for the lists as formerly, but that the lists were to be 100 per cent. correct, and that, for all matter mailed by the defendant and returned to it because undelivered, the plaintiff would pay to the defendant the actual cost of sending out such returned mail matter. That the lists thereafter furnished were about 40 per cent. incorrect, and the defendant became entitled to a credit of about $2,750 for returned mail. That a bona fide dispute arose between the parties in and prior to February, 1931, relative to the state of their accounts under their agreement, and that, in order to adjust it, it was agreed that the plaintiff would furnish free a list of 100,-000 names, that the defendant would select 1,000 names from the list and make a test mailing, and that the percentage of returned mail from the test mailing should be used in determining the amount for which the plaintiff was indebted to the defendant on account of all lists furnished from July to December, 1930, inclusive. That the test mailing resulted in 39.9 per cent. of the mail being returned. That applying that percentage to all lists, as agreed, left the plaintiff owing the defendant $3,627.75 more than the defendant agreed to pay the plaintiff for the lists furnished.

By its reply the plaintiff denied all of the allegations of the counterclaim.

The case was tried to a jury. The evidence as to the issues raised by the counterclaim was in conflict. The jury returned a verdict in favor of the plaintiff for the amount that it sued for and interest, and a verdict for the defendant, upon its counterclaim, for $3,000.

The defendant then moved to set aside the verdict on the ground that the amount of damages awarded it by the jury upon its counterclaim could not be reconciled with the evidence. The court refused to set aside the verdict and to grant a new trial.

From the judgment entered upon the verdict the defendant has appealed, assigning as error the refusal of the court to grant a new trial and that the verdict is not warranted by the evidence, the law or the instructions of the court. There is no complaint about any ruling of the court during the trial or about its instructions to the jury, which were expressly approved by the defendant, and the only complaint is that the amount of the jury's verdict on the counterclaim is not justified by the evidence.

The court instructed the jury: (1) That the plaintiff was entitled to recover the amount which it prayed for and which the defendant admitted was due. (2) That, if the jury found from the evidence that the written agreement was canceled and the oral agreement substituted, and if they further found that a test mailing was agreed to, and that 39.9 per cent. represented the percentage of returned mail, the defendant was entitled to recover upon its counterclaim "the cost and expense to the defendant, in postage, labor and stationery in sending out 39.9 per cent of * * * 2,658,740 names and addresses." (3) That, if they found that the oral contract was substituted for the written contract, as claimed by the defendant, but found that no test mailing was agreed to, then the defendant was entitled to recover on its counterclaim "only such damages, if any, as may have been otherwise shown in the case by the evidence."

It is obvious that, by the last instruction, the jury were left free to allow the defendant such an amount as the evidence in their judgment justified in case they found for the defendant as to the substitution of the oral contract for the written contract, but against it as to the test mailing.

■ Since there were no exceptions to the charge of the court, it became the law of the case, and its correctness cannot now be challenged. Standard Acc. Ins. Co. v. Rossi (C. C. A. 8) 52 F.(2d) 547, 550; Fricke v. General Accident, Fire & Life Assur. Corporation, Limited (C. C. A. 8) 59 F.(2d) 563, 564; Wisconsin & Arkansas Lumber Co. v. Ward (C. C. A. 8) 32 F.(2d) 974, 975. The defendant, if it believed that it was entitled to a verdict for not less than a certain amount in case the jury found for it upon the counterclaim, should have asked for an instruction to that effect. Under the circumstances, there is nothing which we can review.

■ In Wilson v. Everett, 139 U. S. 616, page 621, 11 S. Ct. 664, 665, 35 L. Ed. 286, the court said: "The principal ground of complaint by the defendant seems to be that the jury had no basis for finding a verdict for $10,000, but that their verdict should have been for either $5,000 or $15,000. But this was a question to be reached only through a motion for a new trial; and we cannot, on this writ of error, review any error committed in that respect by the jury, if there were one. Nor can we take cognizance of the complaint that the court overruled the motion for a new trial, or that the verdict of the jury was contrary to law and not warranted by the testimony. The case was fairly submitted to the jury, and the issues involved were passed upon by them."

In Miller v. Maryland Casualty Co. (C. C. A. 2) 40 F.(2d) 463, the same question was involved. Judge Learned Hand, in delivering the opinion of the court, with respect to reviewing the denial of a motion for a new trial on the ground of the inadequacy of the damages, said (page 464): "At least when there is no limit fixed by law, or conceded, and when the jury has fixed more than nominal damages, we cannot review an order denying a new trial, the only act of the judge which can be challenged."

In Fairmount Glass Works v. Cub Fork Coal Co. et al., 287 U. S. 474, 53 S. Ct. 252, 77 L. Ed. 439, a jury had returned a verdict for the plaintiff for $1 in a case where substantial damages were claimed. The Circuit Court of Appeals [59 F.(2d) 539] had granted a new trial unless an increase in the amount of the verdict to $18,500 or some other amount satisfactory to both parties, was consented to. The Supreme Court reversed the Court of Appeals and affirmed the District Court, saying, on pages 481, 482, 483 of 287 U. S., 53 S. Ct. 252, 254:

"The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions; and has been frequently applied where the ground of the mo-

tion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a Circuit Court of Appeals. * * *

"Under certain circumstances the appellate court may inquire into the action of the trial court on a motion for a new trial. Thus, its denial may be reviewed if the trial court erroneously excluded from consideration matters which were appropriate to a decision on the motion, Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917; Ogden v. United States (C. C. A.) 112 F. 523; or if it acted on the mistaken view that there was no jurisdiction to grant it, or that there was no authority to grant it on the ground advanced, Felton v. Spiro (C. C. A.) 78 F. 576, 581; Dwyer v. United States (C. C. A.) 170 F. 160, 165; Paine v. St. Paul Union Stockyards Co. (C. C. A.) 35 F. (2d) 624, 626-628."

The court further said, on page 485 of 287 U. S., 53 S. Ct. 252, 255: "The record before us does not contain any explanation by the trial court of the refusal to grant a new trial, or any interpretation by it of the jury's verdict. In the absence of such expressions by the trial court in the case at bar, the refusal to grant a new trial cannot be held erroneous as a matter of law. Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct. Compare Union Pacific R. Co. v. Hadley, 246 U. S. 330, 334, 38 S. Ct. 318, 62 L. Ed. 751; Dunn v. United States, 284 U. S. 390, 394, 52 S. Ct. 189, 76 L. Ed. 356 [80 A. L. R. 161]."

While much additional authority to this same effect could be cited, the cases referred to can leave no doubt as to the proper disposition of this appeal.

The judgment is affirmed.